

NILES L. JACKSON
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| WANDA C. BRUCE, | * | Case No. 04-14924-NVA |
| | | (Chapter 7) |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| STATE DEPARTMENT FEDERAL CREDIT UNION, | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Adversary No. 04-1565-NVA |
| | * | |
| WANDA C. BRUCE, | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF DECISION DETERMINING DEBT OF
STATE DEPARTMENT FEDERAL CREDIT UNION
<u>TO BE NONDISCHARGEABLE</u>**

On May 31, 2005 the Court conducted a trial to consider whether certain debts owed by

Wanda C. Bruce ("Ms. Bruce" or the "Debtor") to State Department Federal Credit Union

("SDFCU") are dischargeable under 11 U.S.C. § 523(a)(2)(B).[1]  Having considered the testimony, pleadings and the record in this matter, the Court finds that the debts are not dischargeable, as set forth below.

## Facts

Bill Cook, SDFCU's Vice President of operations and development ("Mr. Cook"), supervises lending and collections activity for the credit union.  In 2002, when the subject loans were made to Ms. Bruce, the lending program in place allowed members to obtain loans based on certain risk criteria that placed borrowers in one of four credit tiers, Tier A being the highest score/lowest risk and Tier D being the lowest score/highest risk.  SDFCU assigned potential borrowers a credit score based in part on data it received from Experion, a nationally recognized credit agency.  In 2002, based on the information given to SDFCU, as discussed further below, Ms. Bruce was assigned a credit score of 593, which placed her in the credit union's "Tier B" credit tier.  Among other things, loans given to members in Tier B do not require verification of that member's income.  The member is required to sign a Loanliner Credit Agreement, described therein as an open-ended, multi-featured credit plan, pursuant to which advances can be requested from time to time.  When such advances are requested, the member is required to provide the credit union with an update about her financial information in order to ensure that she continues to qualify for the loan.  Financial updates are taken by credit union employees either in writing, in person, or over the phone, and the data is transcribed on a credit union checklist.

---

[1]  SDFCU's complaint included a count under 11 U.S.C. § 523(a)(2)(A), however, SDFCU withdrew this count on the record before trial began.  The Court also notes at the outset of trial the Debtor withdrew her counterclaims against SDFCU for alleged violation of the Truth in Lending Act and the Maryland counterpart.

Ms. Bruce signed a Loanliner Credit Agreement on January 22, 2002 (the "Loan Agreement"). On the application accompanying the Original Loan Agreement, Ms. Bruce's annual salary was reported as $60,000.00. It also indicated that Ms. Bruce received additional income of $487.00 per month in child support. Based on Ms. Bruce's credit report scores and salary, SDFCU loaned Ms. Bruce $31,553.31 for the purchase of a Mercedes-Benz (the "Mercedes Loan"). On April 25, 2002, SDFCU advanced to Ms. Bruce the amount of $2,000.00 to open a line of credit (the "Line of Credit"). On April 26, 2002, SDFCU advanced to Ms. Bruce the amount of $13,700.00 for the purpose of debt consolidation (the "Consolidation Loan"). The checklist prepared for this advance reflected that Ms. Bruce's salary was $65,000.00 per year.[2] On June 17, 2002, SDFCU advanced to Ms. Bruce the amount of $2,000.00 to open a credit card account (the "Credit Card Loan"). The checklist indicates that income documentation for this loan was not required. On July 2, 2002, SDFCU advanced to Ms. Bruce the amount of $37,891.38 for the purchase of a BMW (the "BMW Loan"). On July 2, 2002, SDFCU also advanced to Ms. Bruce the amount of $6,308.62 for the negative equity at trade-in of the BMW (the "Equity Loan"). According to the checklist prepared for the Equity Loan, Ms. Bruce's salary was $78,000.00 per year. At that point, her credit score had increased to 661, which kept her in the B Tier rating.

Mr. Cook testified that Ms. Bruce applied for these loans individually without a co-applicant and without including any joint income. Only Ms. Bruce signed the Loan Agreement. Ms. Bruce testified that her husband would be responsible for at least part of the indebtedness and that she did not think she had to "tell anyone else" about the joint responsibility. On cross-

---

[2] The Debtor makes much of the fact that the pre-printed blank on the checklist is for "gross monthly income," and an SDFCU employee filled in the annual amount in that blank in error. The Court finds that this emphasis is much ado about nothing.

3

examination, Mr. Cook testified that SDFCU might have approved a joint loan had such a loan been requested, however, Ms. Bruce never indicated that there would be a co-obligor on the Loan Agreement or any subsequent requests for advances.

Ms. Bruce testified that she relied on her monthly bank statements alone to estimate what her annual salary was but that she could not verify what amount she actually paid herself from business operations. She also testified that she operated a business but kept no books and records. Both personal and business deposits were commingled in at least two bank accounts, including deposits from her husband's paycheck, and both personal and business obligations were paid from these accounts.

On March 1, 2004, Ms. Bruce filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In her Statement of Financial Affairs, the Debtor stated that her gross income from business operations was $25,000 and $4,000. She did not identify as instructed whether these amounts were for the current year or the two years before the petition date. She listed her monthly gross income as $2,000 on Schedule I. It is entirely unclear from the bankruptcy papers what the Debtor's income was for 2002.[3] However, on September 7, 2004, the Debtor responded to SDFCU's First Set of Interrogatories regarding her income for the year 2002 as follows:

| | | |
|---|---|---|
| a. | Child support: | $14,638.00 |
| b. | Husband: | $52,879.43 |
| c. | Defendant's beauty shop: | $      0.00 |
| | Total 2002 income: | $67,517.43. |

Mr. Cook testified that the Debtor would not have qualified individually for the loans at this

---

[3] Moreover, the Debtor also testified during a deposition on September 14, 2004, that she destroyed all records pertaining to her business or financial condition. Therefore, her true salary and other financial information will perhaps never be known.

salary level.

On June 1, 2004, SDFCU filed a Complaint to Determine Dischargeability of Debts against the Debtor, seeking a determination that the amount of $68,180.75 plus interest and reasonable attorneys' fees were not dischargeable pursuant to 11 U.S.C. § 523(a)(2).  In its complaint, SDFCU asserts that its debts should not be dischargeable because Ms. Bruce induced SDFCU to extend credit to her based on materially false information about her financial condition given by her to SDFCU in the Loan Agreement, that SDFCU reasonably relied on the information in extending the credit to her, that she knew the Loan Agreement and subsequent applications were false and that she published the applications with the intent to deceive.  The Court found on the record at the conclusion of trial that the debt is nondischargeable.  This Memorandum of Decision elaborates on the Court's reasons for its ruling.

## Discussion

Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge certain debts for money, property, services, or an extension of credit to the extent it was obtained by:

> "(B)  use of a statement in writing -
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with the intent to deceive."

11 U.S.C. § 523(a)(2)(B).

The debtor's misconduct under Section 523(a) need only be shown by a preponderance of the evidence.  First Nat'l. Bank of Md. v. Stanley (In re Stanley), 66 F. 3d 664, 667 (4th Cir. 1995) (citing Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654 (1991) (holding that a creditor attempting to except debts from discharge under Section 523(a)(2)(B) has the burden of proving

each of the elements by a preponderance of the evidence)).  Further, the intent to deceive may be inferred by the totality of the circumstances, including a debtor's knowing or reckless disregard for the accuracy of financial statements.  In re Cohn, 54 F. 3d 1108, 1119 (3d Cir. 1995); In re Miller, 39 F. 3d 301, 305 (11th Cir. 1994); In re Batie, 995 F. 2d 85, 90 (6th Cir. 1993).

      The issue in this case turns on whether the Debtor's Loan Agreement contained a materially false statement about her annual income and whether she signed that agreement with the intent to deceive.  There is no question that the annual salary provided by the Debtor to SDFCU for the Loan Agreement she signed on January 22, 2002 was false.  There is a material difference between $60,000 per year (and in later applications, $78,000 per year) and any of the figures contained in the Debtor's bankruptcy papers, whether it be $25,000, $4,000 or $0.00.  The Court does not find credible the Debtor's testimony with regard to what she may have thought she was earning in 2002.[4]  She knew that she was depositing amounts into her bank accounts from several sources, including her husband's paycheck.  She knew this when she signed the Loan Agreement and she knew this when she requested the subsequent advances.  The Court finds this sufficient to show an intent to deceive.  At the very least, the totality of the circumstances in this case leads the court to conclude that the Debtor acted with a reckless disregard for the accuracy of her financial statements.  The Court also finds that SDFCU met its burden with respect to its reasonable reliance the Debtor.  It made the Mercedes Loan based on her salary and credit scores.  It made the subsequent advances under the Loan Agreement based on updates given to it by the Debtor.  The Debtor had five chances to correct the salary amount

---

[4]    SDFCU attempted to show the Debtor's dishonesty through the use of tax returns and W-2 statements for tax years 2001 and 2002, which were given to SDFCU in 2003, and to which the Debtor testified that she did not prepare, did not remember and did not file with the taxing authorities.  While the Court is concerned about her actions and motive in this regard, it declines to find that these documents induced any reliance by SDFCU in making of the loans in question.  Simply put, the loans were made in 2002, before SDFCU obtained these tax documents.

so that it included only her income. Of course, had she done that, she would not have obtained the loans.

Accordingly, for these reasons, and the reasons stated on the record, the debt owed to SDFCU is deemed nondischargeable pursuant to Section 523(a)(2)(B) of the Bankruptcy Code. The principle balance due on the Mercedes Loan is $13,875.62. The principal balance due on the Debt Consolidation Loan is $10,545.46. The principal balance due on the BMW Loan is $20,468.17. The principal balance due on the Equity Loan is $5,127.95. The principal balance due on the Credit Card Loan is $1,999.30. The principal balance due on the Line of Credit is $2,354.92. Accrued interest on each of these loans totals $6,039.15. The Debtor presented no evidence to refute these amounts. SDFCU, upon proper application, may also be entitled to appropriate attorneys' fees. An order will be entered contemporaneously with this Memorandum.

Cc:

Office of the U.S. Trustee
6303 Ivy Lane, Suite 600
Greenbelt, MD 20770

John P. Van Beek, Esq.
Young, Goldman & Van Beek, P.C.
510 King Street, Suite 415
Alexandria, VA 22313

James Neher, Esq.
1050 17th Street, N.W. Suite 1000
Washington, DC 20036